UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LOUIS KELLER, III                          CIVIL ACTION NO. 24-0336

                                           SECTION P

VS.

                                           JUDGE TERRY A. DOUGHTY

SHREVEPORT POLICE                          MAG. JUDGE KAYLA D. MCCLUSKY
DEPARTMENT, ET AL.

## REPORT AND RECOMMENDATION

Plaintiff Louis Keller, III, a prisoner at Caddo Correctional Center ("CCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately February 22, 2024, under 42 U.S.C. § 1983.  He names the following Defendants: Shreveport Police Department, Louis Keller, Jr., unidentified arresting officers, CCC, Central District Court, "Parole and Probation," an unidentified officer at CCC, an unidentified judge, Officer Julie Elkins, Supervisor Walker, and Judge Emmanuel.[1]  For reasons that follow, the Court should stay Plaintiff's claims against Defendants Elkins and Walker, and the Court should dismiss Plaintiff's remaining claims.

## Background

Plaintiff claims that on September 17, 2023, his father, Louis Keller, Jr., "called the police on" him, falsely reporting that Plaintiff was violating a protective order of which Plaintiff had no knowledge.  [doc. #s 5, p. 3; 9, p. 2].  Plaintiff states that Keller, Jr., allowed him to stay on the property.  [doc. # 5, p. 3].  Plaintiff claims that unidentified officers with the Shreveport

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Police Department falsely arrested him, charging him with violating a protective order.  [doc. # 5, p. 3].

Plaintiff states that on September 18, 2023, an unidentified officer at CCC served him with a protective order at Shreveport City Jail.  [doc. # 5, p. 4].

Plaintiff claims that an unidentified judge set an excessive $150,000.00 bond "on a first offense of violation of a protective order."  [doc. # 5, p. 4].  The judge allegedly knew the charge was a "misdemeanor at best" and that the bond was therefore "extremely high."  *Id.*  Plaintiff also faults the Central District Court and CCC for the alleged excessive bond.  [doc. #s 5, p. 4; 9, p. 1].

Plaintiff alleges that Officer Julie Elkins, a "parole/probation officer," placed a hold on him after learning that he was charged with a felony and had a $150,000.00 bond.  [doc. # 5, p. 4].  Elkins allegedly maintained that Plaintiff violated the terms of his parole.  *Id.* at 5.  Elkins allegedly told Plaintiff that she would "lift the hold" if Plaintiff's charge was dropped to a misdemeanor.  *Id.* at 4.  Plaintiff claims that although his charge was reduced to a misdemeanor and his bond was reduced to ".00 dollars," Elkins "refused to lift the hold[.]"  *Id.*  Plaintiff suggests that his parole has not yet been vacated, stating, "my parole still hangs in limbo to this date . . . ."  [doc. # 9, p. 4].

Plaintiff claims that Judge Emmanuel "allowed the D.A. to throw [Plaintiff's] case off for almost 4 months to Jan. 10, 2024[.]"  [doc. # 5, p. 4].

Plaintiff claims that the Central District Court tricked him into pleading guilty and receiving credit for time served.  [doc. #s 5, p. 5; 9, p. 1].  He writes: "I was tricked into pleading guilty by them saying credit for time served and guilty to the charge at the same time.  I thought credit for time served will just be [not a guilty plea]."  [doc. # 9, p. 3].

Plaintiff requested a hearing concerning his parole. [doc. # 5, p. 5]. He alleges that Supervisor Walker, a parole/probation officer and Elkins' boss, told him that he did not need a lawyer for the hearing. *Id.* At the hearing, Plaintiff suggests he was confused by a question posed to him. *Id.* Stating that he did need a lawyer, he claims, "I felt they knew I need[ed] a lawyer from the beginning." *Id.*

Plaintiff seeks "sanctions and disciplinary actions taken upon all responsible parties to false imprisonment" and compensation for his mental anguish, pain, and suffering.

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. State Action**

Plaintiff names his father, Louis Keller, Jr., as a defendant, claiming that Keller, Jr., "called the police on" him and falsely reported that he was violating a protective order of which Plaintiff had no knowledge.

As above, to state a claim under Section 1983 a plaintiff must allege that a defendant acted "under color" of state law. 42 U.S.C. § 1983. "Private individuals generally are not considered to act under color of law, *i.e.,* are not considered state actors . . . ." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). "[A] private individual may . . . act under color of law in

certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Id.*

Here, Keller, Jr., is manifestly a private actor, and Plaintiff does not plausibly allege, for instance, that Keller, Jr., conspired with a state actor, participated in joint activity with a state actor, or otherwise acted under color of state law. *See Thomas v. Abebe*, 2020 WL 6375119, at *2 (5th Cir. Oct. 29, 2020) (finding, where the plaintiff alleged that his son stole property while he was incarcerated, that "absent any allegation that the defendants were 'jointly engaged with state officials in the challenged action,' [the plaintiff] fails to state a claim under § 1983.").[3]

That Keller, Jr., called the police on Plaintiff or filed a false police report does not, absent more, render Keller, Jr., a state actor. "The execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action." *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985). "[E]vidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case." *Moody v. Farrell*, 868 F.3d 348, 353 (5th Cir. 2017). Rather, "the plaintiff must show that the police in effecting the arrest acted in accordance with a preconceived plan to arrest a person merely because he was designated for arrest by the private party, without independent investigation. The action by the police constitutes an abdication of state authority to a private party that is

---

[3] *See also Roman v. Anthony*, 848 F. App'x 633 (5th Cir. 2021) ("Roman has not established that his complaint sets forth a facially plausible claim for relief because he has failed to allege facts or assert any argument addressing whether the defendants acted under color of state law."); *Montgomery v. Walton*, 759 F. App'x 312, 315 (5th Cir. 2019) ("Montgomery pleads no specific facts regarding the connection between the public officials and private citizens or where or when the criminal conduct occurred. In short, the allegations are incomprehensible for purposes of stating a claim of conspiracy against the defendants to deprive him of any cognizable constitutional rights.").

sufficient to cause the private party's acts to become state action."[4] *Sims*, 778 at 1079 (internal quotation marks and quoted sources omitted).

Here, Plaintiff does not allege that officers arrested him under a preconceived plan and merely because Keller, Jr., designated him for arrest. Nor does he plausibly allege that the arresting officers failed to perform an independent investigation. *See Clark v. Thibodaux City*, 787 F. App'x 198, 201 (5th Cir. 2019). While Keller, Jr., could have influenced the actions of the arresting officers, Plaintiff does not plausibly allege that Keller, Jr., determined the arresting officers' actions. *See Moody*, 868 F.3d at 354 ("Farrell . . . influenced the actions of the police but did not determine them."); *Hernandez v. Schwegmann Bros. Giant Supermarkets*, 673 F.2d 771, 772 (5th Cir. 1982) (opining that a police officer's reliance on "information provided by citizens who witnessed the events" does "not convert the informing party into a state actor" where the officer makes "his own determination of cause to arrest.").

Accordingly, the Court should dismiss Plaintiff's claims against Keller, Jr.

### 3. Entities Unamenable to Suit

Plaintiff names CCC, Shreveport Police Department, and Central District Court as defendants.

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an

---

[4] "For example, in *Smith v. Brookshire Bros., Inc.*, the plaintiffs showed that pursuant to a prearranged plan, the defendant, a grocery store, 'could have people detained [for shoplifting] merely by calling the police and designating the detainee.'" *Moody*, 868 F.3d at 353 (*quoting Smith v. Brookshire Bros, Inc.,* 519 F.2d 93, 94 (5th Cir. 1975) (per curiam)). "In *Bartholomew v. Lee*, on the other hand, the fact that 'the plaintiffs were arrested in part . . . at the request of the [mall] security personnel, and not *wholly* based on any independent observations of the officers,' was not enough to show joint action between the mall and the police." *Id.* (*quoting Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989) (alteration and emphasis in original)).

entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership."  LA. CIV. CODE art. 24.

The entities above do not qualify as juridical persons.  *See Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A] sheriff's office is not a legal entity capable of being sued . . . ."); *Aucoin v. Terrebonne Par. Sheriff's Off.*, 2022 WL 16657429, at *1 (5th Cir. Nov. 3, 2022); *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 417 (5th Cir. 2023) ("The district court did not err in holding the Twenty-First Judicial District lacks the capacity to be sued."); *Griffith v. Louisiana*, 808 F. Supp. 2d 926, 934 (E.D. La. 2011) ("[A] Louisiana state court does not qualify as a juridical person and thus lacks the capacity to be sued.").[5]  Accordingly, the Court should dismiss Plaintiff's claims against these entities.

### 4. "Parole and Probation"

Plaintiff names "Parole and Probation" as a defendant.  Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution.  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[6]  Further, "State agencies . . . are not

---

[5] *See also Swift v. Juvenile Court*, 2009-1182 (La. App. 3 Cir. 3/10/10), 2010 WL 786031 (finding "that the law does not grant a juvenile court the procedural capacity to sue or be sued."); *Damond v. Marullo*, 2020 WL 862180, at *3 (La. Ct. App. Feb. 20, 2020), *writ denied,* 302 So. 3d 1122 (La. 2020) ("Moreover, Article 5 of the Louisiana Constitution, entitled 'Judicial Branch,' provides for the establishment of the courts in this state. Absent therein is any provision declaring that the courts are juridical persons or otherwise granting the courts the procedural capacity to be sued."); *Durden v. Bryson*, 2017 WL 4855437, at *2 (W.D. La. Sept. 26, 2017), report and recommendation adopted, 2017 WL 4847783 (W.D. La. Oct. 25, 2017); *Chisom v. Edwards*, 2012 WL 13005340, at *7-9 (E.D. La. Aug. 6, 2012).

[6] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  *Id.* (internal quotation marks and quoted sources omitted).

'persons' within the meaning of the statute." *Lumpkins v. Off. of Cmty. Dev.*, 621 F. App'x 264, 268 (5th Cir. 2015) (*quoting Will*, 491 U.S. at 71).

The Louisiana Department of Public Safety and Corrections and one of its divisions, the Division of Probation and Parole,[7] are state agencies.  Thus, they are not "persons" under Section 1983.  *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and [Department of Public Safety and Corrections] are not persons . . . ."); *Allemang v. Louisiana Through Dep't of Pub. Safety (Louisiana Off. of State Police, Troop D)*, 2022 WL 3226620, at *4 (5th Cir. Aug. 10, 2022) (finding that the Louisiana State Police Department, which is a "sub-unit" of the Louisiana Department of Public Safety, was not a "person" and was consequently not a cognizable defendant).

Accordingly, the Court should dismiss Plaintiff's claims against Parole and Probation.

**5. *Heck v. Humphrey***

The Court should, under *Heck v. Humphrey*, 512 U.S. 477 (1994), dismiss Plaintiff's claims that unidentified officers with the Shreveport Police Department falsely arrested him and charged him with violating a protective order.  [doc. # 5, p. 3].

A successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.  *Id.* at 477.  Courts assess "whether a claim is temporally and conceptually distinct from the related conviction and sentence."  *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (internal quotation marks and quoted source omitted).  Courts

---

[7] *See* La. Rev. Stat. § 36:401.

"ask whether the claims are necessarily inconsistent with the conviction, or whether they can coexist with the conviction or sentence without calling [it] into question." [8] *Id.*

Here, Plaintiff pled guilty to the charge.  [doc. # 9, p. 3].  Prevailing on the false arrest claims would necessarily imply the invalidity of his guilty plea and conviction for violating a protective order.  "'[F]alse arrest . . . claims challenge the existence of probable cause and, thus, by their essence are collateral attacks on a criminal judgment's validity.'"  *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (*quoting Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)).  When a plaintiff pleads guilty to a charge for which he was arrested, allowing him to proceed on his false arrest claim "would necessarily implicate the validity of [his] convictions because the same conduct that formed the probable cause for [his] arrest also provided the basis for [his] convictions."  *Id.* (*citing Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime for which he was ultimately convicted], would demonstrate the invalidity of [the conviction].")). [9]

---

[8] *See also Mann v. Denton Cty. Texas*, 364 F. App'x 881, 883 (5th Cir. 2010) (recognizing that *Heck* also applies to requests for injunctive and declaratory relief); *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

[9] *See also Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (noting that a guilty plea is a conviction and reasoning that if the plaintiff "were to prevail on his unlawful seizure claim, he would necessarily undermine the validity of these convictions."); *Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) (holding that *Heck* applies even where a plaintiff pled guilty under *Alford* and maintained his innocence); *Queen v. Purser*, 109 Fed. App'x. 659, * 1-2 (5th Cir. 2004) (former inmate's false arrest claim necessarily challenged whether evidence, which officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus claim was not cognizable absent showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest

Thus, Plaintiff may not seek relief for false arrest until his conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. The Court should dismiss these claims.

**6. Unknown Caddo Correctional Officer**

Plaintiff states that on September 18, 2023, an unidentified officer at CCC served him with a protective order at Shreveport City Jail. [doc. s 5, p. 4]. It appears Plaintiff is only providing background to explain that he first received notice of the protective order only after his arrest for violating the order. [doc. # 9, p. 2]. However, to the extent Plaintiff is attempting to seek relief from the unidentified CCC officer for serving him with the protective order at the jail, he does not state a plausible constitutional claim.

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To reiterate, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Plaintiff's claim is impermissibly vague. He does not explain how the defendant's alleged action or omission violated federal law or his constitutional rights. Absent more, his allegation does not suggest unlawful activity. The Court should dismiss this all-too-conclusory claim.

---

would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

**7. Judicial Immunity**

Plaintiff claims that an unidentified judge set an excessive $150,000.00 bond "on a first offense of violation of a protective order." [doc. # 5, p. 4]. The judge allegedly knew the charge was a "misdemeanor at best" and that the bond was therefore "extremely high." *Id.* Plaintiff also claims that Judge Emmanuel "allowed the D.A. to throw [Plaintiff's] case off for almost 4 months to Jan. 10, 2024[.]" *Id.*

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). It "applies even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). It "extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (*citing Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). There are only two exceptions: (1) non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge." *Id.* Courts consider four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515. "These factors are broadly construed in favor of immunity." *Id.* "Immunity may be applied even if one or more of these factors is not met." *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017).

"Immunity is not affected by the alleged magnitude of the judge's errors or the mendacity of his acts." *Stokes v. Ward*, 132 F.3d 1455 (5th Cir. 1997); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("The judge is absolutely immune for all judicial acts not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive.").

Here, setting bond,[10] managing or presiding over court proceedings,[11] and ruling on objections and motions (for example, granting a motion for extension of time),[12] are all acts normally performed by a judge. Moreover, Plaintiff does not allege that either judge acted outside of his or her courtroom or chambers. Likewise, Plaintiff's claims clearly "center around" proceedings before the judges, and nothing indicates that the alleged acts arose outside of visits to the judges in their official capacities.[13] Nor does Plaintiff allege that the judges acted in the

---

[10] *See Walker v. Mississippi*, 2021 WL 4618467, at *2 (5th Cir. Oct. 6, 2021) (finding a judge immune where the plaintiff alleged that "bond was improperly revoked," that bond conditions were too restrictive, and that "reinstatement of bond was improperly denied[.]"); *Barnes v. Madison*, 79 F. App'x 691, 701 (5th Cir. 2003) (finding that absolute immunity cloaked a judge who set the plaintiff's bond); *Herring v. Mayfield*, 51 F.3d 1043, 1995 WL 153026, at *1 (5th Cir. 1995) ("[S]etting the amount of the bond . . . is within the scope of [the judge's] jurisdiction, thus affording her absolute judicial immunity.").

[11] *See Bradley v. Salvant*, 2020 WL 1896550, at *1 (5th Cir. Apr. 16, 2020); *Broadway v. Sinex*, 166 F.3d 339 (5th Cir. 1998).

[12] *See Clark v. Lindsay*, 68 F.3d 465 (5th Cir. 1995) (finding a judge immune from a claim that the judge denied the plaintiff's motion for appointment of counsel); *Bailey v. Johnston*, 2012 WL 5207589, at *5 (W.D. La. Oct. 1, 2012), report and recommendation adopted, 2012 WL 5199409 (W.D. La. Oct. 22, 2012) (finding that denying a motion was "clearly" an act that arose out of judges' normal judicial functions); *Diaz v. Tocci*, 2016 WL 3365494, at *6 (W.D. Tex. June 16, 2016) ("[T]he fact plaintiff disagrees with the rulings made by his state trial court judges does not, standing alone, establish those rulings were taken in a complete absence of all jurisdiction or that those judges were acting outside the scope of their official judicial duties when they made the rulings adverse to plaintiff.").

[13] *See Morrison*, 704 F. App'x at 374 (finding judicial immunity even where the plaintiff failed to offer any allegations relating to three of the four *Ballard* factors); *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 674 (5th Cir. 2015) ("Avdeef makes no effort to argue that

absence of all jurisdiction.  *See* LA. CONST. ART. V, § 16 ("[A] district court shall have original

jurisdiction of all civil and criminal matters.").

Accordingly, the Court should dismiss Plaintiff's claims against the judges because they

are entitled to absolute judicial immunity.

### 8. Officer Julie Elkins and Supervisor Walker

Plaintiff alleges that Officer Julie Elkins, a "parole/probation officer," placed a hold on

him after learning that he was charged with a felony and had a $150,000.00 bond.  [doc. # 5, p.

4].  Elkins allegedly maintained that Plaintiff violated the terms of his parole.  *Id.* at 5.  Elkins

allegedly told Plaintiff that she would "lift the hold" if Plaintiff's charge was dropped to a

misdemeanor.  *Id.* at 4.  Plaintiff claims that although his charge was reduced to a misdemeanor

and his bond was reduced to ".00 dollars," Elkins "refused to lift the hold[.]"  *Id.*  Plaintiff

suggests that his parole has not yet been vacated, stating, "my parole still hangs in limbo to this

date . . . ."  [doc. # 9, p. 4].

Plaintiff also alleges that Supervisor Walker, a parole/probation officer and Elkins' boss,

told him in a hearing relating to his parole that he did not need a lawyer for the hearing.  [doc. #

5, p. 5].  At the hearing, Plaintiff suggests he was confused by a question posed to him.  *Id.*

Stating that he did need a lawyer, he claims, "I felt they knew I need[ed] a lawyer from the

beginning."  *Id.*

As above, a successful civil rights action that would necessarily imply the invalidity of

the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the

conviction or sentence has been reversed, expunged, declared invalid, or called into question by

---

Judge Chupp's actions were 'nonjudicial' in nature or were taken 'in the complete absence of all
jurisdiction,' as required to overcome judicial immunity.").

a federal court's issuance of a writ of habeas corpus. *Heck*, 512 at 477. *Heck* applies in the context of probation and parole violations. *See Jackson v. Vannoy,* 49 F.3d 175, 177 (5th Cir. 1995) ("*Heck* applies to proceedings which call into question the fact or duration of parole."); *Eaton v. McGee*, 113 F. App'x 9, 10 (5th Cir. 2004) ("Eaton's complaint challenges the validity of his probation revocation and two additional convictions, but he has not shown that the revocation or convictions have been set aside or otherwise called into question. His claims are barred by *Heck* and, thus, have no arguable merit.").

While the rule in *Heck* does not extend to pending criminal matters, successful claims under Plaintiff's allegations could necessarily imply the invalidity of any future parole revocation.[14] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the instant claims could necessarily imply the invalidity of a future order or judgment revoking Plaintiff's parole. *See Adongo v. Texas*, 124 F. App'x 230, 232 (5th Cir. 2005) (finding, where the plaintiff asserted he was denied due process during revocation proceedings and during his detention, he was denied counsel, a motion to revoke was invalid and defective, and his probation officers refused to appear at the revocation hearing, that *Heck* barred the claims because a favorable ruling would call into question the validity of the judgment revoking probation); *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) ("A judgment in favor of Jackson on his illegal seizure claim would necessarily imply the invalidity of the revocation of

---

[14] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

his probation and parole.  It logically follows that *Heck* applies to Jackson's probation and parole revocation proceedings.") (footnote omitted); *Santiago v. Martin*, 95 F. App'x 96, 97 (5th Cir. 2004) (finding, where the plaintiff claimed that defendants retaliated and ensured that his parole was revoked, that *Heck* barred the claim).[15]

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes.  *See Kato*, 549 U.S. at 393-94.

Here, Plaintiff's claims are related to rulings that will likely be made concerning his pending detention for an alleged parole violation.  Accordingly, the Court should stay these claims pending the outcome of Plaintiff's pending parole revocation proceedings.[16]

<u>**Recommendation**</u>

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Louis Keller, III's claims against Officer Julie Elkins and Supervisor Walker be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with these claims, he must, within thirty (30) days of the date the parole proceedings against him conclude, file a motion to lift the stay;

---

[15] *See also Carter v. Jenkins*, 550 F. App'x 177, 178 (5th Cir. 2013) ("To the extent that Carter challenges the validity of his parole revocation, the district court's decision determining that such a claim is barred by *Heck* was not erroneous."); *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) ("Littles has questioned the validity of the confinement resulting from his parole-revocation hearing, and he has not alleged that the Board's decision has been reversed, expunged, set aside, or called into question, as *Heck* mandates.").

[16] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his parole revocation, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;

c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he chooses) in this action until the parole proceedings conclude; and

d. Defendants shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's false arrest claims against the unidentified officers be **DISMISSED WITH PREJUDICE**, as frivolous and for failure to state claims on which relief may be granted, until the *Heck* conditions are met.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state claims on which relief may be granted, and for seeking relief from defendants immune from such relief.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 3rd day of May, 2024.

_____

Kayla Dye McClusky
United States Magistrate Judge